# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN  DIVISION

MID-MISSOURI WASTE SYSTEMS, LLC,   )
          )
                Plaintiff,    )
vs.                        )      No. 07-233-CV-W-FJG
          )
LAFARGE NORTH AMERICA, INC.,    )
          )
                Defendant.   )

# ORDER

**1. Lafarge's Motion to Dismiss or In Limine to Exclude Plaintiff's Belatedly Produced Photographs.**

Lafarge states that plaintiff on March 20, 2009 produced 2,290 photos.  Lafarge says that the photos were produced more than fifteen weeks after the close of discovery, without any explanation, without bates numbers or other means of identification.

MMWS responds that the photos were sent to Lafarge with a letter stating that they were photos that MMWS planned to use at trial.  Plaintiff states that the computer discs contained 120 new photos not previously produced and taken after the close of discovery.  The discs also contained 38 duplicate photos that were produced months earlier.  Plaintiff says that it produced 158 photos, not over 2,000.  Additionally, plaintiff states that Lafarge did not comply with Local Rule 37.1.  Plaintiff states that Large sent an email regarding the photos on Friday March 20, 2009 and demanded a response within 2 business days.  Plaintiff's counsel states that he was out of town and did not return until Wednesday which is when Lafarge filed the motion.  Plaintiff states that Lafarge did not attempt to communicate in person or by phone, there was no request for a discovery conference and no follow up was attempted before they filed the motion.

Lafarge replies that the discs produced contained over 2,200 photographs and "it is astonishing that MMWS would contend otherwise."  Additionally, Lafarge states that the photos were not recently taken, because some of the photos show lush green foilage and could not have been taken any later than last summer.  These photos should have been produced much earlier.  Lafarge states that it was not required to comply with Local Rule 37.1 because it is not applicable to motions in limine.

Regardless of whether the discs contain 200 photos or 2,000 photos, the photos were produced well after the close of discovery.  Plaintiff will be allowed to utilize at trial

any photographs that were produced before the close of discovery.  Otherwise, the photographs will not be allowed.  Accordingly, the Court hereby **GRANTS in PART** defendant's Motion in Limine to Exclude Belatedly Produced Photographs (Doc. # 210).

## 2. Lafarge's Motion in Limine to Exclude the Testimony of Patrick Mazza

Lafarge alleges that Patrick Mazza, and his counsel and son, Michael Mazza have frustrated the deposition process by precluding meaningful deposition questioning through the use of hundreds of objections, numerous instructions not to answer and instances where testimony was changed after breaks.  Lafarge also complains that MMWS produced 170 pages worth of documents by email during Mr. Mazza's deposition and belatedly produced aerial photographs of the site, the day after Mr. Mazza's deposition.  When Lafarge threatened to bring this matter to the attention of the Court, Lafarge states that MMWS agreed to produce Mr. Mazza a second time.  During the second deposition, Lafarge says that Mr. Mazza attempted to change his testimony.

MMWS states that it was Lafarge who frustrated the deposition process by agreeing to ground rules regarding the scope of the questions and then ignoring those rules.  Additionally, MMWS states that its counsel suggested that the Court should be contacted to resolve this issue, but Lafarge refused and has instead engaged in a sandbagging strategy.  MMWS states that the second deposition of Mr. Mazza was supposed to be limited to questions objected to at the first deposition regarding the scope of the term "mining" as well as some questions regarding site photographs.  However, MMWS states that Lafarge's counsel asked the witnesses questions related to numerous other areas.  MMWS states that it is ridiculous for Lafarge to complain, after refusing to raise the issue with the Court that it has been prejudiced, when it had two opportunities to depose the witness.  With regard to the belatedly produced documents, MMWS states that these documents were so unimportant, that Lafarge failed to request the right to ask any questions concerning them during Mr. Mazza's second deposition.  As for the photographs, MMWS states that Lafarge was given the right to question Mr. Mazza about the photographs during his second deposition.  MMWS also states that Mr. Mazza did not change his answers to questions, but rather clarified those answers, when he returned from a restroom break, which Lafarge had refused to give him earlier.  MMWS also argues that Lafarge's counsel locked MMWS's counsel out of the room while Lafarge's counsel continued making an objection on the record.

Lafarge denies that it denied anyone a restroom break or that it locked Mr. Mazza out of the room or that it refused to contact the Court.

The Court finds that this issue could possibly have been resolved if the parties had contacted the Court during Mr. Mazza's deposition.  Regardless, the Court does not find that Lafarge has been prejudiced, especially since they were given a second opportunity to depose Mr. Mazza.  Accordingly, the Court hereby **DENIES** defendant's Motion in Limine to Exclude the Deposition of Patrick Mazza (Doc. # 187).

2

### 3. Motion in Limine to Exclude Plaintiff's Belatedly Disclosed Check Listing and Coughlin Memoranda

Lafarge anticipates that plaintiff will attempt to enter into evidence a) an accounting document listing selective transactions from 2002 through January 5, 2009 and b) notes and memoranda authored by Kevin Coughlin ranging in dates from July 17, 2008 to September 15, 2008. Lafarge states that the Check Listing was disclosed for the first time on January 8, 2009 and the Coughlin memoranda was disclosed on January 27, 2009. Due to the belated production of these documents Lafarge asserts that it was denied the opportunity to question Mr. Mazza or Mr. Coughlin regarding these documents and will be deprived of proper trial preparation if these documents are admitted.

MMWS states that the check listing was prepared in response to Lafarge's argument in its summary judgment motion that MMWS could not afford to construct the landfill. MMWS states that the check listing was not responsive to Lafarge's earlier document requests, so it was under no obligation to have it produced earlier. In fact the check listing did not exist until it was prepared in early January 2009, so it could not have been produced earlier. MMWS states that if Lafarge were willing to stipulate that it would not argue "lack of funds" at trial as a reason that the landfill was not constructed, then MMWS would not have a need to introduce the Check Listing at trial.

With regard to the Coughlin memoranda, MMWS states that these materials were located after MMWS's general document production and were produced pursuant to Fed.R.Civ.P. 26's duty to supplement. If they had not been produced MMWS states that Lafarge would have complained then too. MMWS states that this memoranda does not fall within the scope of a Lafarge document request. Additionally, MMWS states that there is nothing new in the Memoranda or had not already been addressed in the depositions.

With regard to the Check Listing, Lafarge argues that MMWS has failed to produce the underlying data, despite Lafarge's request for this. Additionally, Lafarge says that a listing of MMWS's expenses is irrelevant as it does nothing to rebut Lafarge's position that MMWS was unable to finance the construction of the landfill in 2002. MMWS's expenses during 2003-2008 have nothing to do with its assets in 2002.

As to the Coughlin memoranda, Lafarge argues that it does fall within its document requests, and it was in MMWS's possession months before its document production and the discovery cut off date. Lafarge states that it is prejudiced by this belated production because it was denied the opportunity to question Mr. Crider regarding what appears to be contradictory statements as to what Mr. Crider actually said during his deposition as compared to what he said in the Coughlin memoranda.

Case 4:07-cv-00233-FJG   Document 217   Filed 05/04/09   Page 3 of 4

With regard to the Check Listing, the Court finds that it is not relevant to the question of whether plaintiff had adequate assets at the time to construct the landfill. Accordingly, plaintiff will not be allowed to use this document at trial. As for the Coughlin Memoranda, the Court will allow plaintiff to introduce this document at trial. If necessary, Lafarge may examine Mr. Coughlin as to the contents of this document. Accordingly, the Motion in Limine is **GRANTED** with regard to the Check Listing and **DENIED** with regard to the Coughlin Memoranda (Doc. # 189).

**4. Lafarge's Motion in Limine to Exclude the Belatedly Produced and Contradictory Affidavits of Plaintiff's Experts.**

Lafarge argues that plaintiff's expert affidavits were due on October 1, 2008. Lafarge states that MMWS without seeking leave of court proceeded to file two additional amended and revised expert reports on October 3 and October 15. After filing its rebuttal affidavit on December 15, 2008, Lafarge states that MMWS has continued to file additional expert affidavits on December 30, 2008, December 31, 2008 and on January 23, 2009. Additionally, Lafarge argues that plaintiff has filed contradictory affidavits of Mr. Wickern, Mr. Coughlin and Mr. Tharp.

MMWS states that the only change reflected in the "amended" expert reports was to reference the experts' rate of compensation and their publications. With regard to the allegedly contradictory affidavits, plaintiff states that these declarations were prepared in order to rebut Lafarge's assertion that MMWS's experts were incompetent, lacked knowledge and/or should not be permitted to testify. For example with the Wickern declaration, Lafarge did not mention the subject of this declaration (the headings on a drawing) until their reply brief. So, MMWS's sur-reply attached the Wickern declaration and explained the meaning of the heading. The December 31, 2008 Coughlin declaration was in response to Lafarge's Daubert motion which attempted to disqualify him as a witness. As to the Tharp declaration, MMWS states that the only difference between these two is that the Oct. 3 declaration added the required information regarding compensation and publications.

The Court hereby **PROVISIONALLY DENIES** Lafarge's Motion in Limine to Exclude the Belatedly Produced and Contradictory Affidavits of Plaintiff's Experts (Doc. # 192). This issue will be determined at trial.

Date:   05/04/09             **S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri        Fernando J. Gaitan, Jr.
                             Chief United States District Judge